NATIONAL EXCHANGE BANK, Respondent, vs. LANGE and another, Appellants.

*January 7—February 5, 1929.*

*Edgar L. Wood* of Milwaukee, for the appellant Lange.

For the appellant Barry there was a brief by *Bendinger & Hayes* of Milwaukee, and oral argument by *Gerald P. Hayes.*

For the respondent there was a brief by *Shaw, Muskat & Sullivan* of Milwaukee, and oral argument by *W. T. Sullivan.*

The following opinion was filed February 5, 1929:

CROWNHART, J. It appears that the defendant Lange was a prominent business man, thirty-four years of age. He commenced to take out life insurance when he was twenty-four years of age, and had accumulated policies in different companies in the amount of over $500,000. These policies were all twenty-payment life policies. He and Barry were friends. Barry was the agent of the New York Life Insurance Company, and Lange had $100,000 of insurance in that company. At a meeting of Barry and Lange the matter of Lange's life insurance came up. Barry suggested to Lange that Lange could convert his twenty-payment policies into straight life policies and thereby secure a large refund, and by reason thereof could carry a larger amount of insurance at the same cost. Thereafter there were considerable negotiations between Barry and Lange, which resulted in Lange agreeing to convert his twenty-payment life policies into straight life insurance, and to take out, through Barry, $200,000 additional straight life insurance in the New York Life Insurance Company. Barry thereafter procured a $200,000 straight life insurance policy on the life of Lange, and delivered the same to him, and Lange gave to Barry his negotiable promissory note for the amount of the first premium which Barry had advanced to his insurance company.

This note Lange claimed he delivered to Barry on the express condition that it should not be negotiated, and that if the representations made by Barry to Lange, which induced the giving of the note, were not in all respects true and correct, then the entire deal should be called off and the note returned to Lange and the $200,000 insurance policy surrendered. Barry started in to make arrangements for the conversion of Lange's twenty-payment life policies into straight life policies. When he took up the matter with the insurance companies holding said policies, the agent of the Prudential Life Insurance Company immediately called up Lange and suggested that he was making a mistake, and sought an interview. An interview was arranged by Lange with Barry and the agent of the Prudential, at which interview it was agreed that the representations made by Barry as to the Prudential policies were not in all respects correct, because the Prudential policies were not the ordinary twenty-payment life policies then being issued, as represented by Lange, but were more favorable to Lange than he had understood them to be. Lange practically admits that such was the case. He testified:

"At that time there were several features with those policies that were especially good ones, and which I did not know about at this time. I merely thought they were the ordinary twenty-pay life policies, with some endowment additionally. I didn't know the details of it except they had some additional features that were good ones that are not placed on the policies today."

Barry thereupon suggested that they take out of the conversion the Prudential policies, and that the other policies be converted. When the agent of the Equitable Life Assurance Society found out about the proposition, he also got in touch with Lange and sought to convince him that it was against Lange's interest to convert his Equitable policies, and then there was a meeting between Barry, Lange, and the

agents of the Prudential and Equitable companies and the matter was gone over fully between these parties as to the merit of the change proposed by Barry, which resulted in further negotiations between Barry and Lange, in which Lange claims that Barry agreed to cancel the $200,000 policy and not to make the conversion of the other policies, and that Lange would pay the short rate for the $200,000 policy to the date of cancellation and take out an additional $50,000 insurance policy in the New York Life through Barry. Barry denies this agreement, but it is undisputed that further negotiations took place between Barry and Lange, and that Barry called Lange's attention to the fact that Lange's first note, dated August 20th, due thirty days thereafter, was past due. Lange testified:

"Barry took up with me the fact that this note was matured, and it had matured, and had been running for a long time, and something should be done about it, and I said, well, in case the note has been assigned, the bank is an innocent party, something should be done about it, I am sure; but I will do this: I will sign a new note upon condition that the figures you showed me here are absolutely correct and are perfect, and the representations are proper and true, and on that condition I will sign another note, renewal note. I thought if any obligation was made, it was made in the beginning anyway; a new note meant nothing, and I says, if these reports are correct I will sign the note and give it to the bank with the understanding it is just prolonging the negotiations until they go over the papers and discover everything is all right; we will go over them quickly and I will make an effort to take them up with some actuary or some insurance company or some people that know; he says, fine, that is what I want you to do, you will find they are correct and they are as represented. I says, all right, here is the new note, and I gave the new note, and in several days he returned with the canceled note."

The new note was dated October 13th, and was for the amount of the old note, together with interest to date. This

new note was indorsed by Barry and was substituted at the bank for the old note of August 20th. It was made due in thirty days and payable at the bank. When this note became due Lange refused to pay it, and the bank brought this action.

It is the contention of Lange that fraud on the part of Barry was established by the uncontradicted evidence, and that it was incumbent upon the plaintiff to go forward with its proof and show that it was a holder in due course, the presumption raised by the statute, upon the introduction of the note, being sufficiently overcome to require such additional proof. He bases his reliance upon sec. 116.64, Stats., which reads:

"116.64 Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. But the last-mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

This section, it will be noted, provides that where the title of any person who has negotiated a note is defective, the burden is on the holder to prove that he acquired the title as a holder in due course. Defective title is defined in sec. 116.60, Stats.:

"116.60 The title of a person who negotiates an instrument is defective within the meaning of this act . . . when he negotiates it in breach of faith, or under such circumstances as to amount to a fraud. . . ."

Was Barry's title to the note defective when he negotiated it to the bank? Clearly not. Lange gave him the note expressly for the purpose of having it negotiated to the bank to take up his former note which was past due. It was negotiated by Barry in exact accordance with an agreement between Lange and Barry that it should be so negotiated.

Was it negotiated under such circumstances as amounted to fraud? Certainly not. There was no misunderstanding about the facts; there was no imposition upon Lange as to what was to be done with the note, or the conditions of the note. The fact that it was to be negotiated just as it was negotiated was clearly understood by Lange. Whatever the agreement was as to the first note, there is no dispute as to the agreement as to the second note.

If Lange wished to contest the title of the bank to his note, the time to do so was before the giving of the renewal note. However, counsel for Lange claims that the renewal note stands in the same relation to the bank as the first note, and cites several cases which he thinks are authorities for his position. We have examined such cases and find they do not sustain his contention as to the facts of this case.

We conclude that the bank was a holder in due course of the note sued upon, and that the judgment in its favor against Lange must be affirmed.

The question of the liability of Barry to Lange remains. The evidence is conclusive that Lange was a shrewd business man, with unusual experience and knowledge of life insurance. He had upwards of $500,000 of life insurance, and desired more,—enough, in fact, to bring his insurance up to one million dollars. He and Barry discussed the matter, and Barry pointed out to Lange how he might increase his insurance without additional annual premiums, by converting his twenty-payment life policies into straight life policies. This plan would give Lange a substantial refund in cash, and lower premiums in the future. Lange was attracted by the plan, and but for the interference of the two agents of companies affected, it is clear the deal would have gone through. But the agents convinced Lange that there were grave doubts of the business policy of the program. However, while there were some differences as to final results in the different plans, there was no claim that Barry had perpetrated any

fraud on Lange, or had attempted to do so. Lange, in his testimony, does not so claim. True, he claims that Barry negotiated the first note in breach of faith, but there is no claim that he did not get the insurance for which the note was given. But when the second note was given he still trusted Barry, although he was in full possession of all the facts to date. At that time Barry presented Lange with figures in writing disclosing the amount of refund if the policies were converted. There is no question but these figures were accurate. Barry also presented the figures as to the future premiums on all the policies, which were correct. He estimated the dividends, and as to these he could give only estimates. There is no substantial proof that such estimates were not in good faith or that they were not fairly reliable. Lange knew enough about the insurance business to fairly judge the accuracy of the statements by Barry, and it fairly appears he was not misled by Barry. Barry had advanced the premium on a $200,000 policy of insurance issued to Lange by Barry's company, and Lange gave his note for the same, for which, after it became due, he gave a renewal note, including interest, and received back from Barry his first note canceled. Lange thereafter refused to convert his policies and refused to pay his note. At that time he had value received for his note,—an insurance policy of $200,000 and the first premium paid by Barry. Lange offered to surrender the policy and refused to pay the note. Barry demanded payment of the note, and refused return of the policy as closing the transaction.

There is not much dispute about the giving of the first note. Lange had not given Barry a correct description of his Prudential policies. With reference to these policies Lange testified:

"That was twenty-pay life; at that time there was several features with those policies that were especially good ones, and which I did not know about at this time. I merely

thought they were the ordinary twenty-pay life policies, with some endowment additionally. I didn't know the details of it except they had some additional features that were good ones that are not placed on the policies today."

The reason that Barry's figures at first were at fault was because Lange had not given Barry reliable data as to these policies.

The evidence leads us clearly to the conviction that Barry was guilty of no false representations. He had based his figures on Lange's representations as to the nature of the policies, which Lange admits were incorrect. The trial court evidently took the same view, as he refused to submit to the jury any question of fraud on the part of Barry. When the renewal note was given, an entirely new set of figures was presented by Barry, leaving out of the proposal the Prudential policies and the policies of the Old Line Life.

As to the conditions of giving the renewal note, Lange testified as previously quoted.

Further, Lange testified that after giving the second note, the reason for refusing to pay it was because he wanted Barry "to live up to his first agreement."

The evidence is convincing that Lange understood the agreement with Barry was as he testified, *i.e.* if the figures Barry gave him at this time were truthful, he would convert the policies and pay the note out of the refund. The figures that Barry gave, Lange admits were correct. He testified:

"When I was examined before the court commissioner, I stated that all of the figures in Exhibits 8 to 13, except for claimed omissions, were correct; that is, that the amount of the premium in each instance was correct, with the exception of omissions. The amount of refund in each instance was correct. The computation of interest in every instance was correct. The only thing I question is the proposition that if my policies were twenty-payment life, while my payment would be larger, my annual premium larger—I would get a larger dividend from the company than if the same

policies were ordinary life, and that as the time went on those dividends on the twenty-payment life would get larger and larger and then to close the gap between the high premium payment on the limited term policy and the lesser payment on the ordinary life policy. I won't say that very matter was discussed prior to the signing of the note between Barry and me. The matter of dividends between the two types of policies was never discussed between us. . . . The refunds were correctly given on the sheets Exhibit 8 to 13 but I am speaking of prior to the signing of the notes, the refunds were not properly given. *After the second note, I would have made the conversion, I would have received the refunds, and I would have paid the note except for fraudulent representations or concealments.*"

As we have seen, the lower court did not consider there was any question of fraud to submit to the jury, and we find no evidence of fraud; therefore, according to Lange's own testimony, his refusal to go through with his agreement fails entirely of support.

It is plain that Barry did not make any misrepresentations when Lange gave the renewal note. The figures were correctly given, but Lange seeks to go back to the time prior to the giving of the first note, and ignores the fact that there was an entirely new deal when the second note was given.

There is a large amount of testimony,—too much to fully review here. We have gone over it with care, and we are satisfied that the second note was given for value upon a full understanding of the facts, after Lange had fully gone into the whole situation. If he had allowed Barry to convert his policies, he would have received exactly that which Barry promised at the time the last note was given. Lange wished more insurance. He received a policy for $200,000 additional; gave his note for the first premium, which Barry advanced to the company; renewed the note after he had fully investigated the whole matter, but refused to convert his other insurance. In refusing to convert his other insurance

he exercised his privilege, but that was no ground for refusing to pay his note. The evidence fails to support the verdict of the jury that the second note here sued upon was conditional, which condition failed. The jury were evidently confused by the evidence given as to the first note.

*By the Court.*—The judgment of the circuit court in favor of the plaintiff and against Lange is affirmed. That part of the judgment holding Lange entitled to judgment against Barry for the amount Lange is compelled to pay plaintiff, when paid, is reversed, with directions to dismiss the cross-complaint of Lange against Barry, with costs to Barry.

The following memorandum was filed April 2, 1929:

On motion of the plaintiff, no objection being made, the mandate in the decision as filed is amended to read as follows:

*By the Court.*—The judgment of the circuit court in favor of the plaintiff and against Lange is affirmed, without prejudice to such application as the plaintiff may make to the trial court for the correction of the judgment, in accordance with the order for judgment, by including interest upon the note in suit. That part of the judgment holding Lange entitled to judgment against Barry for the amount Lange is compelled to pay plaintiff, when paid, is reversed, with directions to dismiss the cross-complaint of Lange against Barry, with costs to Barry.